# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

Civil Action No. 1:21-cv-00027

AUTONOMOUS SOLUTIONS, INC., a Utah corporation,

    Plaintiff,

v.

TENNANT COMPANY, a Minnesota corporation.

    Defendant.

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Autonomous Solutions, Inc. ("ASI"), through counsel, Berg Law, LLC, and for its Complaint against Tennant Company ("Tennant") alleges as follows:

### JURISDICTION, VENUE, & PARTIES

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims asserted below occurred within the jurisdictional boundaries of this Court, the contract at issue was performed primarily in Utah, and Utah is ASI's principal place of business.

3. At all pertinent times, Plaintiff ASI was, and remains, a corporation organized under the laws of the State of Utah with its principal place of business located in the State of Utah and is a citizen of the State of Utah.

4. Upon information and belief, Defendant Tennant was, and remains, a corporation organized under the laws of the State of Minnesota with its principal place of business located in Minneapolis, Minnesota and is a citizen of the State of Minnesota.

## GENERAL ALLEGATIONS

5. ASI is in the business of developing robotic components to enable autonomous operation of machines in the mining, agriculture, automotive, government and manufacturing industries. ASI's products include remote controlled, teleoperation, and fully automated applications.

6. Tennant manufactures machines for cleaning in a variety of industrial applications.

7. On or around March 26, 2016, ASI and Tennant entered into a Joint Development Agreement (the "JDA"), under which they would work together to develop technology to be incorporated into an "AGV kit," which Tennant intended to incorporate into one or more of its floor cleaners. The AGV kit would enable the cleaners to operate autonomously. A true and correct copy of the JDA is attached hereto as Exhibit A.

8. The JDA contemplated a four-year development program with the Tennant T7 floor cleaner going into limited production using the AGV kit after year two. Attached to the JDA was a list of project milestones, to which the parties initially agreed, that were to mark progress of the program.

9. The financial terms of the JDA, contained in Attachment B thereto, provided for payment of $3,000,000 in commercialization fees from the effective date of the contract to the first anniversary of the effective date and at least $8,000,000 over the term of the JDA.

10. ASI was to invoice Tennant on a bi-weekly basis. Tennant agreed to reimburse ASI for any undisputed labor costs within 15 days of receipt of ASI's invoices during the time between the effective date of the JDA and finalization of the product specifications.

11. After finalization of the T7 commercial prototype, Tennant was to reimburse ASI for the amount of any undisputed labor costs at a rate of 50% of the invoiced amount. The JDA allowed Tennant to withhold the remaining 50% of the bi-weekly invoiced amounts until it accumulated $250,000. The JDA referred to this $250,000 amount as the "Holdback."

12. Tennant was to pay the Holdback to ASI no later than 15 days after the T7 commercial prototype was finalized. Tennant accumulated the $250,000 Holdback amount but has never paid that amount to ASI.

13. The JDA further provides for monthly and quarterly reviews of the program. The Parties agreed that the first quarterly review, to be held 90 days after the effective date, would be for the purpose of agreeing on the detailed product specifications governing the development of the JDA AGV Kit for the T7.

14. Thereafter, the quarterly reviews would be to "review the milestones to be delivered in the quarter and determine whether the milestones were in fact delivered, confirm and/or amend the milestones to be delivered during the upcoming quarter, agree upon ASI's projected spend for the quarter, if applicable determine if a Prototype has been successfully delivered" and discuss issues related to intellectual property.

15. The parties appear to have realized early on that much of the program Tennant laid out in the JDA was not thoroughly planned and largely unworkable. For instance, Tennant did not clearly define the scope and requirements for Gen 1, requiring ASI and Tennant to undertake a more detailed planning process for Gen 2.

16. The parties also quickly ceased using the milestones attached to the JDA and managed milestones instead through the quarterly review process, with Tennant's expectations changing as the project progressed.

17. Moreover, Tennant informed ASI early in the Project that it needed to defer engineering resources to other projects, which would result in a 12-week delay. Once those resources were restored, Tennant demanded development of a plan to recover the lost time to meet Gen 2 milestones. Tennant acknowledged at the January 2017 quarterly review that such a plan was aggressive and involved "inherent risk."

18. Tennant's interpretation of the scope of the JDA also expanded beyond the agreement's terms. The JDA, for instance, called for development of one machine, but as the project progressed, Tennant demanded ASI develop three machines at the same cost.

19. Tennant also made demands on ASI as a result of pressure from its customers to accelerate the schedule and deliver prototypes for demonstrations before they were actually ready. ASI did its best to accommodate these expectations by using temporary measures, but that process itself redefined Tennant's expectations going forward in ways that hurt the project overall.

20. Tennant's decision to lay off much of the staff doing development work for the project exacerbated the problems with the project, as did a resource freeze Tennant instituted near the end of ASI's involvement in the project.

21. The root cause of the program's failure, however, appears to have been Tennant's own financial distress. During the fall of 2017, Tennant informed ASI on multiple occasions that it was under financial pressure to terminate the JDA and asked whether ASI could self-fund the project.

22. ASI conducted due diligence on this proposal and informed Tennant that it could. ASI was prepared to take this step to preserve the project and its relationship with Tennant.

23. Despite the financial difficulties Tennant was facing, progress continued on the T7 prototype, and in November of 2017, the T7 prototype was ready to demonstrate.

24. The first demonstration occurred at Tennant's facilities the week of November 13, 2017. Tennant then demonstrated the T7 commercial prototype at a company called AEON Delight in Japan the week of November 27, 2017 and on December 5, 2017 at Daimaru Restaurant in Japan.

25. The T7 prototype, therefore, was finalized no later than November of 2018, triggering Tennant's obligation under Attachment B to the JDA to pay the Holdback amount within 15 days. Tennant, however, continues to refuse to pay it.

26. Around this same time, ASI became aware that Tennant was pursuing a relationship with one of its competitors, Brain Corp., to produce an autonomous cleaning machine.

27. On January 4, 2018, Tennant informed ASI during a conference call that Tennant was terminating the JDA due to ASI's alleged inability to perform thereunder. David Strohsack of Tennant confirmed the termination in a letter dated January 9, 2018.

28. In the letter, Mr. Strohsack alleged that the reason for termination was that ASI had missed milestones and caused cost overruns.

29. Tennant's argument that ASI missed milestones was in fact mere pretext, and Tennant admitted as much to ASI in private discussions. The real impetus for the termination was Tennant's own internal funding shortfalls and Tennant's relationship with ASI's competitor, Brain Corp.

30. Tennant's termination of the JDA was wrongful and, therefore, a material breach of that agreement. Because of Tennant's wrongful termination, ASI was entitled to collect the Early Termination Fee as provided under the JDA, but Tennant has refused to pay ASI those amounts.

31. Tennant has also refused to pay ASI the Holdback amount, which is due and owing to ASI.

32. In addition, Tennant breached the JDA by refusing to give ASI 30 days to cure the alleged breaches, if any, as required by the JDA.

## FIRST CLAIM FOR RELIEF-BREACH OF CONTRACT

33. ASI incorporates herein by reference the preceding paragraphs.

34. A valid and enforceable contract, the JDA, existed between the Parties.

35. ASI substantially performed its obligations under the contract.

36. Tennant materially breached the contract by, among other things, unilaterally changing the terms of the agreement during performance, failing to provide sufficient resources to perform under the contract and fund the Project, wrongfully terminating the contract, failing to pay ASI amounts due and owing under the contract, and failing to allow ASI to cure any alleged breaches within the 30-day window as required under the contract.

37. Tennant's material breaches of the contract have caused ASI to suffer significant damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION-BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING

38. ASI incorporates herein by reference the preceding paragraphs.

39. The Parties' contract included an implied covenant of good faith and fair dealing.

40. Tennant breached that covenant by failing to exercise its discretion under the contract in a manner consistent with that covenant.

41. Tennant's breaches of the covenant have caused ASI to suffer significant damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ASI respectfully requests this Court:

1. Enter judgment in its favor and against Tennant on the claims set forth herein;

2. Award ASI damages in an amount to be proven at trial;

3. Award ASI its costs and attorneys' fees as provided by law; and

4. Award ASI any other relief the Court deems necessary.

## JURY DEMAND

ASI demands a trial by jury on all claims so triable.

Dated this 26th day of February 2021.

BERG LAW, LLC

*/s/ Jared E. Berg*
Jared E. Berg
*Counsel for Plaintiff Autonomous Solutions, Inc.*

Plaintiff's Address:
990 N 8000 W
Mendon, UT 84325